IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HARGRAVE, | : | CIVIL ACTION |
|           Plaintiff, | : | |
| | : | No. 15-201 |
|       v. | : | |
| | : | |
| CHARLES RAMSEY and | : | |
| THE CITY OF PHILADELPHIA, | : | |
|           Defendants. | : | |

**MCHUGH, J.**                                                                                        **MAY 20, 2015**

**MEMORANDUM**

Plaintiff, a former Philadelphia police officer, has filed this civil rights lawsuit to challenge his termination from the City's Police Department.  Defendants have filed a motion to dismiss three out of four counts in Plaintiff's Complaint.  For the reasons explained below, I will partially grant Defendants' Motion to Dismiss.

**I.        Introduction**

Though frequent spelling errors and other problems make Plaintiff's Complaint somewhat difficult to parse, the facts alleged in the Complaint appear to be fairly straightforward.  According to the Complaint, the Philadelphia Police Department has a policy that it will terminate employees who are arrested for offenses that carry a penalty upon conviction of at least one year of incarceration.  Complaint ¶ 22.  The policy also provides that employees may be reinstated if exonerated or found not guilty of the charged offense.  *Id.* at ¶ 23.  The Complaint alleges that Defendant Charles Ramsey, Police Commissioner for the City of Philadelphia, is responsible for creating and enforcing the policy.  *Id.* at ¶ 22.

1

Plaintiff John Hargrave was a police officer with the City of Philadelphia when he was arrested for an offense that carried a penalty upon conviction of one or more years of incarceration. In November of 2012, his employment was terminated. *Id.* at ¶ 14. Then in 2014, Plaintiff "was found not guilty of the criminal charges" and he sought reinstatement. *Id.* at ¶¶ 28–29. Defendant Ramsey "refused to reinstate the Plaintiff" and instead "required the Plaintiff to obtain reinstatement through the collective bargaining arbitration process." *Id.* at ¶ 30. Ramsey participated as a witness in the arbitration process, and Plaintiff's request for reinstatement was unsuccessful. *Id.* at ¶ 32.

Based on these facts, Plaintiff filed a complaint with four counts. The first count alleges Defendant Ramsey violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Count Two alleges that Plaintiff participated in some sort of litigation related to race discrimination and in retaliation, Defendant Ramsey refused to reinstate Plaintiff.[1] Count Three alleges that the City of Philadelphia is liable under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) for Plaintiff's injuries. Finally, in Count Four Plaintiff brings a claim under Pennsylvania's constitution for race discrimination in employment.

Defendants seek the dismissal of Counts Two, Three, and Four pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.    Standard of Review**

When considering a Motion to Dismiss under Rule 12(b)(6), the Court "must accept all of the complaint's well-pleaded facts as true," and then "determine whether the facts alleged in the

---

[1] Plaintiff does not offer any details of this litigation or Plaintiff's role in it, alleging only that Ramsey "did not return the Plaintiff to city police employment because of the Plaintiff's prior first amendment activities to speak out and express in a prior lawsuit an opposition to race discrimination and/or misuse of the criminal and disciplinary system." Complaint ¶ 51. *See also* Complaint ¶ 35 (ascribing Plaintiff's injury to "Plaintiff's race and a prior lawsuit filed against the city, for race discrimination and malicious prosecution of a theft allegation, for which Plaintiff was exonerated.").

2

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).

### III. Discussion

#### a. Count II: Retaliation

Plaintiff has failed to state a plausible claim for First Amendment Retaliation. For a public employee to state a claim for First Amendment retaliation, he first "must show that his speech is protected by the First Amendment," and second "that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174–75 (3d Cir. 2015). To satisfy the first step of this analysis and demonstrate that the speech at issue was in fact protected, the plaintiff must show:

> (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006).

Whether a public employee is speaking as a citizen or as an employee depends on "whether [the employee's] utterances were among the things that the employee 'was employed to do.' " *Flora*, 776 F.3d at 177 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). For example, in *Lane v. Franks*, the Supreme Court ruled that an employee was engaged in protected speech when testifying under oath pursuant to a subpoena because, in part, "[i]t is undisputed that Lane's ordinary job responsibilities did not include testifying in court proceedings." 134 S. Ct. 2369, 2378 n.4 (2014).

Thus, a plaintiff pursuing a First Amendment retaliation claim must allege sufficient facts about the utterances at issue and his employment to show he spoke as a citizen and not pursuant to his ordinary job duties. Plaintiff's Complaint does not come close to alleging sufficient facts.

The Complaint is not even clear about whether Plaintiff was a party or a witness in the prior litigation or spoke in some other context.  The Complaint references speech in "opposition to race discrimination" but provides no additional information.  Complaint ¶ 51; *see also* Complaint ¶ 35.  Nor does the Complaint offer any information about Plaintiff's job duties.  The Plaintiff's Opposition to the Motion to Dismiss adds:

> [T]here is and would be no official job duty ordinarily done by a Philadelphia police officer that is assigned to narcotic, which is the Unit Plaintiff work at when he spoke to oppose in court disparate disciplinary practices, which practice was done because of race. Plaintiff also opposed the misuse of the criminal process by the City and specifically defendant Ramsey, which too is not an ordinary duty of a narcotics officer.

Plaintiff's Memorandum in Opposition to Motion to Dismiss 6–7.  However I cannot consider new factual allegations in a memorandum opposing a Motion to Dismiss when evaluating the sufficiency of a Complaint.  *Com. of Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2014) ("The court may not, for example, take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

Defendants argue that the Complaint is deficient because Plaintiff has failed to specify dates and critical facts necessary to support his First Amendment retaliation claim.  I am not certain that specific dates are required, but I agree with Defendants that the Complaint lacks sufficient factual allegations to satisfy the elements of the retaliation claim.  I will therefore dismiss this claim without prejudice so that Plaintiff may, if he chooses, amend the Complaint to correct its deficiencies.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251–52 (3d Cir. 2007) (discussing Third Circuit's rules for allowing amendments to civil rights complaints).

4

      b. *Count III: Monell liability of the City of Philadelphia for Defendant Ramsey's role in Plaintiff's injury*

Defendants next challenge the sufficiency of Plaintiff's claim that the City of Philadelphia is liable for the alleged violation of Plaintiff's rights. Defendants contend that Plaintiff has failed to identify an official policy or custom that caused Plaintiff's injury. Plaintiff, in response, argues that Defendant Ramsey, as a policymaking official, has made the City of Philadelphia liable by enforcing the policy in a discriminatory manner.

I agree with Defendants that Plaintiff's claim here hangs on a thin reed, but I find that he has stated facts sufficient to survive this Motion to Dismiss. As both parties recognize, municipalities can only be liable for constitutional violations that they have directly caused themselves; *respondeat superior* liability is not available in civil rights claims against municipalities. *Monell*, 436 U.S. at 694. Municipal liability must be based on constitutional injuries caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* Municipal liability may be based on the single action of an official "where the decisionmaker possessed final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986). For example, in *Pembaur*, the Supreme Court ruled that a prosecutor had acted as a policymaker for a county "when he ordered the Deputy Sheriffs to 'go in and get' the witnesses." *Id.* at 484; *but see City of St. Louis v. Praprotnik*, 485 U.S. 112, 129–30 (1988) (Mayor and Aldermen were not final decision-making authorities over employee transfer because a Civil Service Commission had ultimate review authority).

Here, Plaintiff has alleged that Defendant Ramsey was acting as a policymaker with final decision-making authority when creating and enforcing a policy against Plaintiff in a

5

discriminatory manner. Complaint ¶¶ 22–24, 30, 32; *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990) (Philadelphia Police Commissioner was acting as a policymaker when making sexual harassment and discrimination policies). Assuming the truth of Plaintiff's allegations about Defendant Ramsey's role in Plaintiff's termination, I decline to dismiss this claim.

      *c. Count IV: Pennsylvania State Constitution*

Defendants finally seek dismissal of Plaintiff's claim of race discrimination arising under the state constitution. Defendants contend that under Pennsylvania law, the Pennsylvania Human Relations Act "is the exclusive remedy for discrimination claims in the workplace." Defendants' Memorandum in Support of their Motion to Dismiss 7.

Defendants are correct that Pennsylvania law does not permit Plaintiff's claim. Certainly the Pennsylvania Constitution guarantees equal protection of the laws to Pennsylvania's citizens. *Love v. Borough of Stroudsburg*, 528 Pa. 320, 324–25, 597 A.2d 1137, 1139 (1991) ("The equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution."). But the existence of the right does not necessarily imply the existence of a remedy. As Judge Vanaskie put it in *Aquino v. County of Monroe*:

> It is, of course, one thing to recognize a constitutional provision as expressive of public policy for purposes of a recognized cause of action for wrongful discharge; it is quite another thing to create a direct cause of action for violation of the constitutional provision.

2007 WL 1544980, at *4 (M.D. Pa. May 24, 2007).

Pennsylvania courts have held that the statutory framework for preventing discrimination in employment—the Pennsylvania Human Relations Act ("PHRA")—is the sole remedy for that

6

injury.  In *Clay*, the Pennsylvania Supreme Court dismissed a common law wrongful termination claim against a private employer.  *Clay v. Advanced Computer Applications*, 522 Pa. 86, 90, 559 A.2d 917, 919 (1989).  The Court held that the PHRA "precludes assertion of a common law tort action for wrongful discharge based upon discrimination."  522 Pa. at 89, 559 A.2d at 918. Permitting common law wrongful discharge claims would be inconsistent with the legislature's purpose in enacting the PHRA: "the statutory scheme would be frustrated if aggrieved employees were permitted to circumvent the PHRC$^2$ by simply filing claims in court."  522 {a/ at 92, 559 A.2d at 920.

*Clay* rejected an employment discrimination claim against a private employer, not a constitutional claim against a government employer.  However, Pennsylvania law also precludes employment discrimination claims not brought through the PHRA even when based explicitly on constitutional rights.  In *Weaver v. Harpster*, Pennsylvania's Supreme Court considered a sex discrimination claim against an employer with fewer than four employees.  601 Pa. 488, 491, 975 A.2d 555, 556 (2009).  The PHRA only covers employers with four or more employees, and therefore it provided no remedy for the plaintiff.  *Weaver*, 601 Pa. at 505, 975 A.2d at 565.  The plaintiff argued that the Equal Rights Amendment (ERA) to the Pennsylvania Constitution provided an alternative avenue for relief, asserting the ERA created "an exception to the employment at-will doctrine in cases of sex discrimination without regard to the employer." *Weaver*, 601 Pa. at 514, 975 A.2d at 565.  The Court rejected this argument, holding that the ERA does not "provide a private cause of action for tort" and the PHRA remains the exclusive right and remedy against employment discrimination.  *Weaver*, 601 Pa. at 516, 975 A.2d at 572.$^3$

---

$^2$ The Pennsylvania Human Relations Commission, charged with enforcing the PHRA.

$^3$ See also the concurrence in *Clay* in which Chief Justice Nix noted, "[a]lthough there is a constitutional right to be free from discrimination based on gender … Pennsylvania does not recognize a common-law action by an employee for termination of an at-will employment relationship based on sex discrimination."  522 Pa. at 98, 559 A.2d at 923.

7

Thus Pennsylvania's constitutional right against sex discrimination does not provide a remedy against employers separate from the remedies in the PHRA.  Plaintiff has not shown any basis for finding that the preclusive effect of the PHRA does not also extend to race discrimination claims.  *See Aquino*, 2007 WL 1544980, at *3 (not finding any authority that Pennsylvania's analogue to the Fourteenth Amendment's Equal Protection Clause was self-executing).

Plaintiff's arguments against this conclusion are not persuasive.  First, Plaintiff points out that the United States Supreme Court in *Fitzgerald v. Barnstable Sch. Comm.* held that Title IX does not preclude constitutional claims under 42 U.S.C. § 1983.  555 U.S. 246, 257 (2009).  This argument is inapplicable because *Fitzgerald* relates to a completely different statutory scheme and a different level of government.  Second, Plaintiff cites a Third Circuit decision he argues recognized a private right of action under the ERA.  *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir. 1990).  This *dicta* from *Pfeiffer* has been criticized by subsequent state court decisions.  *Dillon v. Homeowner's Select, Affinity Ins. Servs., Inc.*, 957 A.2d 772, 778 (Pa. Super. Ct. 2008) (Equal Rights Amendment does not create a remedy for employment discrimination on the basis of sex against a private employer).  Third, Plaintiff argues his claim is saved because Pennsylvania courts recognize a private remedy for injury to reputation.  *Hatchard v. Westinghouse*, 516 Pa. 184, 193, 532 A.2d 346, 350 (1987).  Although it is true that Pennsylvania law protects the right to reputation, this fact is irrelevant to the question of whether Pennsylvania allows plaintiffs to bring race discrimination claims against employers under the state constitution instead of the comprehensive statutory scheme of the PHRA.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's First Amendment retaliation claim will be dismissed without prejudice and Plaintiff's race discrimination claim under the Pennsylvania State Constitution will be dismissed with prejudice.  An appropriate order follows.

     /s/ Gerald Austin McHugh
United States District Court Judge