**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HARGRAVE,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 15-201** |
| **v.** | : | |
| | : | |
| **CHARLES RAMSEY and** | : | |
| **THE CITY OF PHILADELPHIA,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                      **JUNE 8, 2016**

**MEMORANDUM**

**I.      Introduction**

I write only for the parties, so I review the facts alleged in Plaintiff's Complaint only
briefly.  Plaintiff, a black male, worked as a Police Officer for the City of Philadelphia from
1995 to 2012.  In 2012, he was charged with offenses related to a domestic incident involving
himself and his wife.  The police department terminated Plaintiff's employment for "Conduct
Unbecoming."  Def. Mot. Summ. J. Ex. 5 ("Notice of Dismissal.").

Plaintiff was found not guilty of the charges against him, and he requested reinstatement
as a police officer.  Plaintiff asserts that other white officers who had been terminated following
criminal charges and subsequently found not guilty, were directly reinstated.  He further
contends that Defendants refused to directly reinstate Plaintiff's employment, but instead,
required him to seek reinstatement through an arbitration process.  Plaintiff participated in the
arbitration process.  Defendant Charles Ramsey testified at the reinstatement hearing, and
Plaintiff was ultimately denied reinstatement.

Plaintiff filed the present lawsuit in which he alleges Defendants violated his state and federal constitutional rights by denying him reinstatement.  The original Complaint asserted four claims against Defendants Charles Ramsey and the City of Philadelphia.  Count I, brought pursuant to 42 U.S.C. § 1983, alleged that Defendants' decision not to reinstate Plaintiff's employment amounted to race discrimination in violation of the Fourteenth Amendment.  Count II asserted a claim of retaliation in violation of the First Amendment.  Plaintiff claimed that Defendants decided not to reinstate Plaintiff's employment "because of the Plaintiff's prior first amendment activities to speak out and express in a prior lawsuit an opposition to race discrimination and/or misuse of the criminal and disciplinary system."  Compl. at ¶ 51.  Count III was a claim of *Monell* liability against the City of Philadelphia for the underlying alleged discrimination and retaliation claims.  Finally, in Count IV, Plaintiff brought a claim alleging race discrimination under Pennsylvania's state constitution.

Defendants filed a Motion to Dismiss.  In my Memorandum of May 20, 2015, I explained that Counts II and IV of Plaintiff's Complaint, alleging First Amendment retaliation and race discrimination under the Pennsylvania Constitution, must be dismissed for failure to state a claim.  After my Order of May 20, 2015, effecting that decision, Plaintiff's only remaining claims were Count I, which alleged a violation of the Fourteenth Amendment on the basis of race discrimination, and Count III, which asserted a *Monell* claim against the City of Philadelphia.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment attempts to raise new substantive claims.  Specifically, Plaintiff appears to raise claims of gender discrimination under the 14th Amendment, deprivation of constitutional due process, and discrimination in violation of Title VII.  Plaintiff did not allege these claims in his Complaint, and did not seek to amend his Complaint to add them.  It would therefore be inappropriate for me to consider the

merits of these claims at this stage.  Nor would it be appropriate for me to grant Plaintiff's request, made in a footnote in his opposition to Defendants' fully briefed Motion for Summary Judgment, for leave to amend his Complaint to revise the First Amendment Retaliation claim I dismissed almost a year prior.  *See* Fed. R. Civ. P. 15 (outlining conditions under which a plaintiff may amend the complaint).

In short, the only claims properly before me are Plaintiff's claims of race discrimination and *Monell* liability arising under 42 U.S.C. § 1983 and the Fourteenth Amendment.

Plaintiff argues that Defendant's Motion for Summary Judgment is procedurally deficient.  For example, Plaintiff contends that Defendants' Motion improperly describes certain facts as undisputed only for the purposes of their Motion, and the Motion must therefore be denied.  Pl. Resp. Opp. Sum. Jud. at 7.  Plaintiff also contends Defendant violated discovery rules by, for example, failing to make certain mandatory disclosures under Fed. R. Civ. P. 26 during discovery and failing to provide certain "911 records" to Plaintiff.  Pl. Resp. Opp'n Summ. J. at 12, 14.

None of these arguments is persuasive.  Plaintiff offers no support for his argument that a Motion for Summary Judgment that "is not accompanied by a Statement of Material Facts that contains undisputed facts for all time" must be denied.  Pl. Resp. Opp'n Summ. J. at 8.  It is true that a determination of a motion for summary judgment turns on the existence of a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  However the rule does not require a movant to declare that any facts are undisputed "for all time."  Plaintiff also fails to support its argument that Defendant's Motion must be denied for failure to follow discovery rules.  First, it is hardly clear that Rule 26 required Defendants to disclose the name of Francis Healy, whom Defendants describe as a records custodian rather than a fact witness, or that Defendants were

obligated to turn over the 911 record that Plaintiff references.  Second, even if I were persuaded

that Defendants had violated any of their discovery obligations, Plaintiff has not explained how

these violations prejudice him or why denying the Motion for Summary Judgment would be an

appropriate sanction.  *See Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 592 (D. N.J.

1997) (excluding evidence not an appropriate sanction for failing to comply with discovery

obligations).  In sum, I am not persuaded that Defendants have committed any procedural or

discovery-related errors that would justify denying their Motion for Summary Judgment.  I will

proceed, therefore, to considering the merits of Defendants' Motion.

## II.    Summary Judgment

A court must grant a motion for summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  Defendants here, as the moving party, bear the burden to show that

Plaintiff cannot establish key elements of his claims.  "If the non-moving party bears the burden

of persuasion at trial, 'the moving party may meet its burden … by showing that the nonmoving

party's evidence is insufficient to carry that burden.' " *Kaucher v. County of Bucks*, 455 F.3d

418, 423 (3d Cir. 2006) (citing *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).  For

Defendants to succeed, they may " 'show[]'—that is, point[] out to the district court—that there

is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986).  For Plaintiff to succeed, he must "produce evidence which, when

considered in light of [his] burden of proof at trial, could be the basis for a jury finding in [his]

favor." *Kline v. First Western Government Securities, Inc.*, 24 F.3d 480, 485 (3d Cir. 1994).  I

must "view the record in the light most favorable to [the non-moving party] and resolve all

reasonable inferences" in the non-moving party's favor. *Jones v. School Dist. of Phila.*, 198 F.3d

403, 409 (3d Cir. 1999) (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 n.3 (3d Cir. 1998)

(en banc)).  I may only consider statements "capable of admission at trial."  *Shelton v. Univ. of*

*Medicine & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir 2000).

### a. Disputed Facts

Plaintiff points to purportedly disputed facts to oppose Defendants' Summary Judgment

Motion.  I will address these disputes right away, before they confuse the discussion of the merits

of Plaintiff's claim.

For example, Plaintiff claims that "[i]t is a disputed fact for who is the person [sic] that

started the event [referring to the domestic dispute that led to charges against Plaintiff]."  Pl.

Resp. Opp. Sum. Jud. at 11.  Plaintiff also appears to dispute whether there were one or two

domestic disputes between himself and his wife.  None of these are *material* to the Fourteenth

Amendment Race discrimination claim.  "Only disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  I will not grant or deny summary judgment because of

disputes over facts that do not affect the outcome of Plaintiff's claims.

Plaintiff also persists with an argument that there is a dispute over why he was

terminated.  The source of Plaintiff's argument is the policy regarding "Conduct Unbecoming"

that was the basis for Plaintiff's termination.  The policy as printed on Plaintiff's Notice of

Dismissal reads:

> **CONDUCT UNBECOMING, SECTION 1-§026-10** (Engaging in any action
> that constitutes the commission of a felony or a misdemeanor which carries a
> potential sentence of more than (1) year.  Engaging in any action that constitutes
> an intentional violation of Chapter 39 of the Crimes Code (relating to Theft and
> Related Offenses).  Also includes any section that constitutes the commission of
> an equivalent offense in another jurisdiction, state, or territory.  Neither a criminal

> conviction nor the pendency of criminal charges is necessary for disciplinary
> action in such matters.

Def. Sum. Jud. Ex. 5 ("Notice of Dismissal"). The plain reading of this policy is that "conduct unbecoming" would include *either* the commission of a felony or misdemeanor carrying a sentence longer than one year *or* engaging in theft. This is not how Plaintiff reads the policy, as both he and his counsel insist that the paragraph means he was fired for theft. *See, e.g.*, Dep. Hargrave, 45:11–46:8; 55:20–22; 82:2–83:7. But Plaintiff's interpretation of the policy is flatly contradicted by its explicit terms.

This dispute is not one that precludes summary judgment. Whether Plaintiff believes he was terminated for theft or for charges against him that carried a possible sentence of more than one year, the controlling question before me is whether Plaintiff has produced sufficient evidence to support a claim of racial discrimination. I turn to that question now.

### b. Fourteenth Amendment Race Discrimination

Plaintiff claims that Defendants discriminated against him on the basis of his race in violation of the Fourteenth Amendment by selectively enforcing the reinstatement policy. To succeed on this claim, Plaintiff must show:

> 1) that other similarly situated employees were not terminated despite their non-compliance with the [policy] and 2) that this selective treatment was based on an "unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right." *Holder v. City of Allentown,* 987 F.2d 188, 197 (1993) (citing *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.1989) (internal quotations omitted)).

*Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). To prove a violation of the Fourteenth Amendment, Plaintiff must show he suffered *intentional* discrimination on the basis of his race. *Pa. v. Flaherty*, 983 F.2d 1267, 1269 (3d Cir. 1983) (citing *Washington v. Davis*, 426 U.S. 229 (1976)); *Zappan v. Pa. Bd. of Probation and Parole*, 152 F. App'x 211, 219 (3d

Cir. 2005) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination.").

### i. Similarly Situated Employees

Defendants argue that Plaintiff has failed to produce evidence that similarly situated employees were treated differently from Plaintiff.  I agree.  Plaintiff has named a host of officers charged with similar offenses that he claims received different treatment.  None of the proposed comparators is adequate to meet the requirements for his claim.

Comparators in employment discrimination claims must be similar in "all relevant respects."  *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).  Whether two employees are similarly situated is "a fact-intensive inquiry based on a whole constellation of factors."  Factors include employees' supervisors, job responsibilities, salary, and conduct.  *Monaco v. American General Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004); *Opsatnik*, 335 F. App'x at 223.  At this advanced stage, Defendants must be able show that there is insufficient evidence that comparators exist.

Plaintiff has proposed a large collection of comparators, but he has failed to produce evidence that would allow a jury to conclude any meets the requirements for a *similarly situated* comparator.  The first potential comparator is "Jessy Jones," named in the Complaint.  At deposition, Plaintiff conceded he does not know the race of "Jessy Jones," and as I read his testimony, his knowledge of "Jessy Jones" may be no more than office rumor.  Dep. Hargrave at 60:21–61:19.[1]  Plaintiff offers no additional evidence about him.  Defendants aver that they have

---

[1]    Q. Did you know Jessy Jones?
      A. No.
      Q. How did you find out about the Jessy Jones case?
      A. Other Officers. Common knowledge. I mean, pretty much you work in the district or you go to court, cops always talk about other cops getting locked up or did you know such and such and this happened or such and such and that happened.
      Q. Do you know what race Jessy Jones is?

been "unable to identify or locate information regarding a previous or current employee" by that name who sought reinstatement. Def. Mem. Supp. Summ. J. at 11. This "mere scintilla" of evidence supporting "Jessy Jones" as a comparator is not enough to create a triable issue of fact for a jury. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

Plaintiff's information about the comparators Sergeant "Choico" and Captain "Flemming" is similarly sparse. Plaintiff claims Choico is a sergeant in the Fourteenth District, that he is white, that he was involved in a domestic dispute of some kind, and was never fired. Dep. Hargrave at 57:6–22. Plaintiff asserts Captain Flemming is a white officer, and that when he was a sergeant, he was involved in some sort of domestic incident and not fired. Dep. Hargrave at 57:23–58:4. Plaintiff offers no other information about the details of the "domestic incidents," or the employment conditions of Choico and Flemming. Defendants aver they have been unable to locate information about these officers. Def. Mem. Supp. Summ. J. at 18. If these two officers were never fired, as Plaintiff claims, that fact further distinguishes their circumstances from Plaintiff's. Plaintiff has not produced enough evidence to support Choico or Flemming as a comparator.

Plaintiff further identifies Officer "Daren" as a comparator. Plaintiff stated at deposition that Officer Daren is white, but Plaintiff's memory about other features of Officer Daren was uncertain:

Q. Do you know what he was charged with?

A. I think it was domestic where they just—violation of protection orders from him and his wife. I believe he eventually—they didn't lock him up. They just terminated him and allowed him to have his job back.

Q. You said they allowed him to have his job back?

A. No.
Dep. Hargrave at 61:6–16.

A.  Yes. I guess arbitration or some form—

Q.  He went through arbitration as well?

A.  I believe so.  I believe the Commissioner was there.

Dep. Hargrave at 54:7–18.  The record contains no additional information about Officer Daren, and Defendants aver they have been unable to identify an Officer Daren terminated for a protection from abuse order.  Here again, even if there is an Officer Daren terminated for violating a protection from abuse order, Plaintiff has offered no information about Officer Daren's actual job responsibilities, supervisors, the actual conduct that led to the charge, or anything else that would support a finding he is a similarly situated employee to Plaintiff.  Even the charges themselves are different: "Daren" was purportedly terminated for violating a protection from abuse order; Plaintiff was charged with Aggravated Assault, Unlawful Restraint, Simple Assault, and Recklessly Endangering Another Person.  These charges are significantly different, and based on the record, there is no basis for concluding that Officer Daren could be considered a comparator employee.

Plaintiff names the "Chuttocks brothers" as comparators.  Dep. Hargrave at 54:22–55:8.  Plaintiff explains that they were charged with "cutting phone lines, stealing things."  *Id.* at 55:4–5.  According to Plaintiff, one of the brothers was fired and the other never faced charges.  He concedes that the brothers' case was unrelated to domestic violence.  *Id.* at 55:6–8.  Plaintiff offers no other evidence establishing any similarities between himself and the Chuttocks brothers.  The completely different conduct at issue[2] and the lack of any other information about these officers forecloses the possibility that the Chuttocks brothers might be comparators for Plaintiff.

---

[2] That Plaintiff purports to believe he was fired for "theft" is irrelevant.  His actual conduct had nothing to do with theft, which he does not dispute, and officers who were disciplined for theft-related conduct are not similarly situated to Plaintiff.

9

Officer Newsom is a black police officer who Plaintiff states was rehired after a domestic incident and not required to go through the arbitration process. Dep. Hargrave at 56:8–17. Defendants correctly point out that Plaintiff's claims about Officer Newsom undercut Plaintiff's claim by showing a member of Plaintiff's protected class was not excluded from favorable treatment.  Plaintiff responds, "A claim under equal protection does not require the harsher treatment to be the same all of the time."  Pl. Resp. Opp'n Summ. J. at 24–25.  I agree that discrimination may exist even if it does not operate consistently.  However, this fellow employee who is a member of the same protected class as Plaintiff and who received the treatment Plaintiff claims he was denied cannot serve as a comparator for Plaintiff in a discrimination claim.  *See Houston v. Dialysis Clinic, Inc.*, No. 13-4461, 2015 WL 3935104, at *6 (D. N.J. June 26, 2015) ("Kwok is not a similarly situated non-minority employee; she is a minority").

Finally, Plaintiff identifies a group of officers that he says should all serve as comparators.  Officers "Luchidero," "Spicer," "Bettis," "Spizer," and "Linwood" according to Plaintiff, were "terminated for theft and related offenses due to Jeff Walker."  Dep. Hargrave at 74:9–11.  News articles Plaintiff submitted as exhibits with his Response to the Motion to Dismiss indicate that Plaintiff is referring to Thomas Liciardello, Michael Spicer, Perry Betts, Linwood Norman and John Speiser, five officers (out of a group of six) who were charged with a host of offenses including "robbery, extortion, kidnapping, and drug dealing."  Pl. Ex. 10b (Jim Saska, *U.S. Attorney's Office indicts 6 Philly narcotics cops on corruption charges*, CITY PAPER, July 30, 2014).  For several reasons, these officers are not useful comparators for Plaintiff.  The underlying conduct that led to the charges against those officers is very different from the conduct that led to Plaintiff's charges.  One of the officers was black, which undercuts Plaintiff's argument of racial discrimination.  Furthermore, Plaintiff has very little information about how

these officers actually returned to work.  Plaintiff explained in his deposition, "I'm not 100 percent that they went through the arbitration process.  I do know there was some sort of deal cut that allowed them to come back on the job."  Dep. Hargrave at 87:3–6.  Plaintiff, by his own admission, does not know if these officers received the same or different treatment than he receveived, and he has produced no other information in the record.

To summarize, Plaintiff has thrown quite a few names at the proverbial wall,[3] but as legally sufficient comparisons, none of them sticks.  Plaintiff has failed to demonstrate that similarly situated non-minority employees received different treatment from Plaintiff.  Consequently, the first element of Plaintiff's claim of discrimination fails.

### ii.  Intentional Discrimination

Defendants further contend that Plaintiff has failed to produce evidence that his race played any role in motivating Defendants' actions with respect the Plaintiff's reinstatement.

Unlike Title VII, a plaintiff alleging a Fourteenth Amendment equal protection violation must prove intentional discrimination on the basis of a protected classification such as race.  *Flaherty*, 983 F.2d at 1273.  Discriminatory intent can certainly be proved based on the totality of the circumstances, such as a combination of "disparate impact" and "some other indicia of purposeful discrimination."  *Id.*  Indicia of purposeful discrimination include evidence that a decision was based explicitly on race.  *See, e.g. Pryor v. National Collegiate Athletic Ass'n.*, 288 F.3d 548, 564 (3d Cir. 2002) (holding plaintiffs stated a claim when alleging NCAA "stat[ed] explicitly that it believed the adoption of this policy would increase the graduation rates of black

---

[3] There are a few other names that appear in various parts of Plaintiff's Summary Judgment Opposition in ways that suggest Plaintiff may be attempting to use them as comparators.  For example, in his "28 U.S.C. 1746 Declaration for a Rule 56(E) Affidavit" Plaintiff claims there are officers who have been accused of domestic assaults and have been transferred to the "DPR Unit" rather than being terminated.  Plaintiff also seems to imply that Sheila Hargrave, his wife and a police officer, is a comparator because she was neither charged nor terminated in connection with the domestic incident that is at the heart of this case.  If Plaintiff intended to argue any of these additional individuals are comparators, I have no difficulty finding that the bare allegations and different factual circumstances related to these individuals are completely insufficient to find these individuals are comparators.

athletes relative to white athletes.").  Circumstantial evidence, such as the historical background of a decision, can also support a finding of discriminatory purpose.  *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977).  "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  *Id.* at 266.

No such evidence exists on this record.  There is no evidence at all of explicit racial discrimination by Defendants.  Nor is there indirect evidence that rises above assertion or speculation.  As discussed above, Plaintiff has not shown there is a pattern of discriminatory treatment in connection with reinstatements after incidents of domestic violence.  He has offered no evidence of stray remarks related to discriminatory treatment of people in Plaintiff's circumstances.  There is simply no evidence in the record from which a jury could conclude Plaintiff was the victim of intentional discrimination.

I find that Defendants have carried their burden.  Plaintiff has not produced evidence of similarly situated non-minority employees who received different treatment, and he has not produced evidence of intent.  Summary judgment on this claim will be granted for Defendants.[4]

### c.  City of Philadelphia's *Monell* liability

Plaintiff also seeks to hold the City of Philadelphia liable for his alleged injuries.  Because I find Plaintiff's Fourteenth Amendment Race Discrimination claim fails, Plaintiff's *Monell* liability claim must fail as well.  A municipality cannot be held liable for the deprivation of Plaintiff's Constitutional rights if Plaintiff has suffered no such deprivation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  Therefore I must grant summary judgment on this claim as well.

---

[4] Because I find that Plaintiff's Equal Protection claim must be dismissed on its merits, I will not separately consider Defendants' argument that Defendant Ramsey is shielded by qualified immunity.

**III. Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.

An appropriate order follows.

_____/s/ Gerald Austin McHugh_
United States District Court Judge